POLASKI, Appellant, vs. PITTSBURGH COAL DOCK COM-
PANY, Respondent.

*December 16, 1907—January 8, 1908.*

*Master and servant: Negligence: Injuries to servant: Dangerous place
to work: Duty of master: Rules and regulations: Court and
jury: Nonsuit: Assumption of risk: Contributory negligence.*

1. Where a business is conducted by many servants performing
   work independently of each other and in which the work of
   one becomes periodically dangerous to another, it is the duty
   of the master to provide reasonable precautions against such
   danger, among which is promulgating rules and regulations for
   the giving of warning to persons likely to be endangered when
   such dangerous acts are about to be performed.

2. In some such cases the danger may be so obvious and imminent
   and the making of regulations so easy that their absence would
   constitute negligence as matter of law, while in other cases it
   becomes a question for the jury.

3. In an action by a servant for injuries from a car set in motion
   by another servant whose work was wholly independent ex-
   cept as it promoted the general operation of the master's busi-
   ness, the evidence, stated in the opinion, is *held* to present a
   situation where a jury might properly decide that an omission
   of the master to promulgate rules and regulations governing
   the moving of the car constituted a want of due care on the
   master's part, and that such negligence was the proximate
   cause of the plaintiff's injuries, making a *prima facie* case of
   negligence and liability, and hence it was error to grant a non-
   suit.

4. There can be no assumption of risk from a negligent method of
   doing business of which the plaintiff had no knowledge.

5. A servant cannot be said to have assumed the risk of a car set in
   motion by another servant whose work was wholly independ-
   ent, where the evidence tended to establish that the car was
   stationary when plaintiff stepped on the track in front of it;
   that plaintiff had no knowledge of the absence of a rule re-
   quiring a warning; that warnings were frequently given, al-
   though voluntarily; and that never, within the observation of
   the plaintiff, had a car been set in motion without the presence
   of another servant before it or of a lookout on top or a shouted
   warning to the men on the track.

6. Where a servant was injured by being run over by a car set in
motion by another servant whose work was wholly independent,
the injured servant cannot be convicted of contributory negli-
gence, as matter of law, in the face of evidence tending to prove
that the car was stationary at the time he stepped onto the
track, that the servant in charge of the car was not in a posi-
tion to be seen by him, that the injured servant had never
known a car to be moved without some warning, and that he
had no reason to expect that the car that injured him would
be set in motion.

APPEAL from a judgment of the circuit court for Douglas
county: A. J. VINJE, Circuit Judge. *Reversed.*

The defendant maintained a coal dock at the city of Su-
perior about 900 feet in length and 300 feet in width, in
the center whereof were three longitudinal railroad tracks
for the loading and moving of railroad cars, upon which cars
were frequently in motion, usually moved by attaching a hook
to them and gripping unto a moving cable beside each track.
It was necessary and customary for the workmen on the
dock to pass frequently across these tracks, which were in a
depression about four feet deep. The plaintiff was a com-
mon laborer and had, with six other men, just completed the
loading of a car on one of these tracks, when the gang were
ordered by the foreman to cross the tracks to the other side
of the dock. One after another they jumped down and
started across in front of this car, which plaintiff's testimony
tends to show was stationary, with nothing to indicate that
it was about to be moved. As plaintiff passed in front of
it, somewhat diagonally across the track, having seen it sta-
tionary as he started, it was put in motion and overtook him
just as he reached the furthest or west rail of the track,
knocked him down, and passed over one of his legs. There
was evidence that no rule had been promulgated by the de-
fendant in any wise tending to guard against the running
down of employees by these cars; that the gripman who had
charge of moving them was accustomed indiscriminately to

fasten on either the front or back end; that under some cir-
cumstances there would be a man on top of the cars to set
the brakes, at other times not; that the gripman's habit was
irregular; that sometimes he looked in front of the car or
shouted warning of its approach and sometimes he did not,
and that in the present instance he had fastened his grip to
the rear end of the car, had not looked in front, and gave no
warning.　The negligence alleged in the complaint was the
failure on the part of the defendant to promulgate any rule
or regulation or to give any instruction tending in any wise
to protect its employees from the peril of these moving cars,
either by requiring signal and warning or the presence of
any person in front of the car when moved; also in employing
the plaintiff in an unsafe place without any such regulations,
and in ordering him to cross the track after having directed
the gripman to start the car.　At the close of the plaintiff's
evidence the trial court granted a nonsuit, from judgment in
accordance with which the plaintiff brings this appeal.

*W. P. Crawford* and *L. K. Luse,* for the appellant.

For the respondent there was a brief by *Grace & Hudnall,*
and oral argument by *H. H. Grace.*

Dodge, J.　In a business conducted by many employees
performing work independently of each other and in which
the work of one becomes periodically dangerous to another,
it is the duty of the master to provide reasonable precautions
against such danger, and amongst these is promulgating rules
and regulations for the giving of warning to the persons
likely to be endangered when such dangerous acts are about
to be performed.　*Promer v. Milwaukee, L. S. & W. R. Co.*
90 Wis. 215, 63 N. W. 90; *Portance v. Lehigh Valley C. Co.*
101 Wis. 574, 77 N. W. 875; *Bain v. N. P. R. Co.* 120 Wis.
412, 98 N. W. 241; 1 Labatt, Mast. & Serv. § 210.　Other
illustrative cases are *Hartvig v. N. P. L. Co.* 19 Oreg. 522,
25 Pac. 358; *Inland S. Co. v. Smith,* 39 Ind. App. 636, 75

N. E. 852; *Ford v. L. S. & M. S. R. Co.* 124 N. Y. 493, 26 N. E. 1101; *Dowd v. N. Y.; O. & W. R. Co.* 170 N. Y. 459, 63 N. E. 541. In some instances the danger is so obvious and imminent and the making of regulations so easy that their absence might be considered negligence as a matter of law. In other cases of more doubt it becomes a question for the jury whether the omission of them is a failure of that due care which the employer owes his employees to guard them from injury. In the present case we have no doubt that as cars were likely at any moment to be set in motion by some employees, and other employees, whose work was wholly independent except that it promoted the general operation of the dock, were likely at any moment to be upon the tracks engrossed with their work so that an injury to them from a silently moving car was within imminent probability, it might well be thought by reasonable men that the duty of ordinary care required that some precaution, either by warning or lookout, be exercised. It is also obvious that those precautions were entirely easy and feasible. A lookout might be stationed on the forward end of the car, a bell or other signal sounded or given, but more easy and natural still would have been the precaution that the gripman should uniformly attach the moving apparatus to the front end and thus be in a position where he could see the track ahead of him. The evidence tended to prove that absolutely no instructions or regulations requiring any precautions whatever had ever been promulgated, and such is the negligence charged by the complaint. We deem it clear that a jury might properly decide that such omission constituted a want of due care on the part of the employer, nor can we doubt that they might reach the conclusion that such negligence was the proximate cause of the injury to the plaintiff, who was in a place required by his duty and by the command of his superior. Hence we must conclude that a *prima facie* case of negligence and liability was made out.

It is claimed by the respondent that plaintiff assumed the risks of doing the business as it was ordinarily done. But there was evidence tending to establish that the plaintiff had no knowledge of the absence of a rule requiring warning; also that warnings were frequently given voluntarily by the gripman or others, and that never, within the observation of plaintiff, had a car been set in motion without either the presence of the gripman before it or of a lookout on top or a shouted warning to men on the track. There can be no assumption of the risk from a negligent method of doing business of which plaintiff has no knowledge.

Again, it is urged that plaintiff was guilty of specific acts of contributory negligence, in that he jumped onto the track immediately in front of the car. But there was evidence tending to prove that the car was stationary at that time, that the gripman was not in a position to be seen by him, and, since he had never known a car to be moved without some warning, that he had no reason to expect that this one would be. Upon such a state of facts, of course contributory negligence could not be predicated as matter of law; especially, too, when he had been given an order from his superior, who presumably knew whether there was peril, to enter upon and hasten across the track.

We are convinced that the case should have gone to the jury.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.