CORRIGAN, Appellant, vs. NEW DELLS LUMBER COMPANY,
Respondent.

*October 7—October 28, 1913.*

**Master and servant: Negligence: Unsafe working place: Warning of
recurring danger: Rules, when necessary.**

1. Plaintiff, one of a crew of four men employed by the defendant
   in unloading logs from cars, was struck and injured by a log
   which was rolled from a car about thirty or thirty-five feet
   from where he was standing.  In doing the work, two of the
   crew rolled the logs from the cars and then joined the plaintiff
   and the fourth man in straightening them and rolling them
   away on the skids.  Warning was customarily, though not al-
   ways, given when logs were to be rolled from the cars; but
   none was given at this particular time.  Plaintiff had had long
   experience and was well acquainted with the movement of logs.
   He could at all times see what was going on around him, and
   he knew that two of the crew had gone back to the car to roll
   off the logs remaining thereon, one of which struck him.
   *Held,* that the situation was not one in which it was the duty
   of the defendant to promulgate a rule requiring warning to be
   given when logs were to be rolled from a car; and hence, as a
   matter of law, defendant was not guilty of negligence in failing
   to promulgate such rule.
[2. Whether the failure to promulgate a rule could be said to be
   the proximate cause of the injury, or whether it is negligence
   not to promulgate a rule where servants customarily do the
   things which the observance of a rule would require, not de-
   cided.]

APPEAL from a judgment of the circuit court for Eau
Claire county: E. C. HIGBEE, Judge.  *Affirmed.*

This action was brought to recover damages for personal
injury.  The plaintiff was one of a crew engaged in unload-
ing logs from railway cars.  He had been employed three
or four days at the time of the injury, but had a long ex-
perience in working in the lumber woods and in sawmills
and was generally well acquainted with the movement of logs.
At the time of the injury logs had been decked up in rollways

extending from the railroad track a distance of several hundred feet. There was one set of skids in use, extending from the car which was to be unloaded to the rollway, over which the incline was quite steep. There was another set extending therefrom to the end of the rollway, which was moderately inclined so that the logs thereon would have a tendency to roll toward the outer edge of the skidway. A crew consisted of four men. Two of the crew pulled the car stakes, which action usually released the greater portion of the logs on the car. A carload consisted of about forty or forty-five logs. The released logs rolled down the first set of skids and on to the ground. A couple of logs were allowed to remain on the second set of skidways, about thirty or thirty-five feet from the car, so as to act as a bumper or means of stopping the logs rolled from the cars at such point. After the stakes were removed the two men engaged in the removal joined the other two, and together they straightened the logs on the skidways which left the car when the stakes were removed and rolled them to the end thereof, leaving a couple of logs to act as bumpers for the logs coming from the car on the next breakdown. The two men who removed the stakes then went back to the car and loosened up the logs which remained thereon. This was called the second breakdown. These two breakdowns did not suffice to remove all the logs from a car, but the remaining logs were rolled off with cant-hooks. The men engaged in unloading then joined the other two men and the logs were rolled to or toward the end of the rollway. The plaintiff was not one of the two men who broke down logs from the cars. He was injured by being struck by a log which came from the car on the second breakdown, and was thirty or thirty-five feet from the car when he was struck. The testimony tended to show that no warning was given to the men on the rollway by the men on the car before the logs were broken down at this particular time. The plaintiff testified that he

did not know this second breakdown was going to be made when it occurred, but said he knew that the two men who removed the logs from the car had left the others and gone back to the car for that purpose. The evidence showed that this crew unloaded eight or ten carloads of logs in a day, and the plaintiff testified that this was the only instance in which the men on the car failed to give a warning before rolling the logs off the car during the time that he was employed at the work. This evidence is not disputed, but it was testified by older employees that warning was not at all times given during the term of their employment. At the close of the plaintiff's case the court nonsuited the plaintiff, and he appeals from the judgment of nonsuit.

For the appellant there was a brief by *W. H. Frawley & T. F. Frawley,* and oral argument by *T. F. Frawley.*

For the respondent there was a brief by *Sturdevant & Farr,* and oral argument by *L. M. Sturdevant.*

BARNES, J. It is the contention of the appellant that it is a jury question whether the defendant was negligent in failing to promulgate a rule requiring the men working on the car to warn the other two employees before rolling the logs off a car that they were about to do so. This is the sole question raised by the appeal. In support of the claim that the case should have been submitted to the jury the following cases are cited: *Slam v. Lake Superior T. & T. R. Co.* 152 Wis. 426, 140 N. W. 30; *McHolm v. Philadelphia & R. C. & I. Co.* 147 Wis. 381, 132 N. W. 585; *Gierczak v. Northwestern F. Co.* 142 Wis. 207, 125 N. W. 436; *Polaski v. Pittsburgh C. D. Co.* 134 Wis. 259, 114 N. W. 437; *Bain v. N. P. R. Co.* 120 Wis. 412, 98 N. W. 241; *Portance v. Lehigh Valley C. Co.* 101 Wis. 574, 77 N. W. 875; *Promer v. M., L. S. & W. R. Co.* 90 Wis. 215, 63 N. W. 90.

The trial court held otherwise, basing its conclusion on *Polaski v. Pittsburgh C. D. Co., supra; Pern v. Wussow,*

144 Wis. 489, 129 N. W. 622, and other cases of like tenor. In the latter case the plaintiff was one of a crew employed in' removing an embankment of earth. He was working at its base while others worked at the top cracking the frozen earth. Occasionally the steam shovel would loosen up frozen pieces which it would not take away and they would roll down the embankment, and sometimes frozen pieces would fall from the shovel. Warnings were customarily given, but no rule had been promulgated requiring that they should be. The plaintiff was injured by frozen earth sliding down the embankment and striking him. No warning was given, and the negligence relied on was failure to promulgate a rule requiring that a warning. should be given.

After referring to the rule established in *Polaski v. Pittsburgh C. D. Co., supra,* and other cases, which made it the duty of the master to promulgate rules requiring warning where servants were engaged in different departments and the operation of one department was likely to create peril to servants engaged in another, the court said:

"Here there were but few employees, all working, substantially, together. The activities of the entire crew were confined within quite a narrow compass. All were in sight and hearing of each other, with only a few steps from one extreme to the other of the operations. There was but one crew, and quite a small one, working at the single task of transferring the bank of earth to wagons, appellant being a handyman on the lower level, part of his work being to shovel the pieces of frozen earth and stones, which the shovel did not take, into the wagons. . . . Plaintiff seems to have been injured because of a danger with which he was perfectly familiar and which he voluntarily subjected himself to, a peril incident to constantly changing conditions created by him and his associates, which all appreciated and understood they were expected to avoid by individual vigilance. The law applicable thereto is plain, as many times illustrated in our decisions. The rule that the master must furnish his servant a reasonably safe place to work and use ordinary

care to keep it constantly so, does not apply.   *Larsson v. Mc-Clure,* 95 Wis. 533, 539, 70 N. W. 662; *Osborne v. Lehigh Valley C. Co.* 97 Wis. 27, 71 N. W. 814; *Mielke v. C. & N. W. R. Co.* 103 Wis. 1, 79 N. W. 22; *Nix v. C. Reiss C. Co.* 114 Wis. 493, 504, 90 N. W. 437."

In the present case there was a crew of four men engaged in a common task within plain sight and hearing of each other and doing a kind of work in which conditions were constantly changing, and we are unable to see why the rule of the *Pern Case* should not apply and why it is not decisive of this case if followed.   In some respects at least the case of the plaintiff in this action is weaker than was the case made by Pern.   It was not always possible for him to see what was going on around him or to guard himself from injury by looking.   Here the plaintiff could do so, and he knew that two of the men who were working with him went back to the car for the purpose of breaking down the logs which remained on the car, one of which caused his injury.

With the possible exception of *Gierczak v. Northwestern F. Co.* 142 Wis. 207, 125 N. W. 436, all of the cases cited by appellant and which tend to support his contention were cases where servants engaged in performing one particular kind of work were injured by the negligence of servants in another crew doing a different kind of work.   We think the *Gierczak Case,* when read in the light of the facts which were established, falls fairly within the rule laid down in *Polaski v. Pittsburgh C. D. Co.* 134 Wis. 259, 114 N. W. 437.

We conclude that the circuit judge was correct in holding that the case presently under consideration fell within the principles laid down in *Pern v. Wussow,* 144 Wis. 489, 129 N. W. 622, and cases there cited, as well as the case of *Strehlau v. John Schroeder L. Co.* 142 Wis. 215, 125 N. W. 429.   It appeared in the instant case that the servants had themselves usually if not almost invariably adopted the practice of giving warning when logs were to be rolled off a car.

It appeared from the evidence, without dispute, that such warning had been given more than one hundred times daily during the three or four days plaintiff had been at work, without failure or omission, until the time of the injury. Whether under the decision in *Richter v. Union L. Co.* 153 Wis. 261, 140 N. W. 1126, the failure to promulgate a rule could be said to be the proximate cause of the injury, or whether it is negligence not to promulgate a rule where servants customarily do the things which the observance of a rule would require, we do not find it necessary to decide.

*By the Court.*—Judgment affirmed.

TIMLIN, J., dissents.